David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Doreen Farmer, and all similarly situated individuals, | : Civil Action No.: |
| | : |
| Plaintiffs, | : **COMPLAINT FOR DAMAGES** |
| | : **PURSUANT TO THE FAIR CREDIT** |
| v. | : **REPORTING ACT, 15 U.S.C. § 1681, ET** |
| | : **SEQ. AND FOR RELIEF UNDER THE** |
| Experian Information Solutions, Inc., | : **DECLARATORY JUDGMENT ACT, 15** |
| | : **U.S.C. § 2201** |
| Defendant. | : |
| | : **JURY TRIAL DEMANDED** |
| | : |

## JURISDICTION AND VENUE

1.     This Court has federal question jurisdiction because this case arises out of violation of

federal law. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331; *Smith v. Community Lending, Inc.*,

773 F. Supp. 2d 941, 946 (D. Nev. 2011).

2.      This action arises out of Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

3.      Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in Clark County, the State of Nevada and because Defendant is subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, Experian has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

### PARTIES

4.      Plaintiff Doreen Farmer ("Plaintiff") is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff and all putative Class members (the "Class") are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).

5.      Defendant Experian Information Solutions, Inc. ("Experian" or "Defendant") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.

6.      Experian is a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(f), doing business in Nevada with its principal place of business in Ohio.

7.      Additionally, Experian is a "Consumer Reporting Agency that Compiles and Maintains Files on Consumers on a Nationwide Basis," as that term is defined under 15 U.S.C. § 1681a(p).

8.    Unless otherwise indicated, the use of Experian's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Experian.

## INTRODUCTION

9.    The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.  Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

10.    Plaintiff brings this action on behalf of herself and on behalf of a class of similarly situated Class members.

11.    Plaintiff seeks to challenge the actions of Experian in connection with Experian's failure to adequately reinvestigate her and the Class's credit disputes by reinvestigating or modifying joint accounts to report consistently, in violation of 15 U.S.C. §§ 1681e(b) and 1681i.

## GENERAL FACTUAL ALLEGATIONS

*Experian's policy regarding reinvestigation of joint accounts: 15 U.S.C. §§ 1681e(b), 1681i*

12.    A central duty the FCRA imposes upon consumer reporting agencies is the prompt and thorough reinvestigation of disputes about the accuracy of reported credit information

which consumers bring to the agency's attention.  *See* 15 U.S.C. § 1681i.  Once notified of an alleged inaccuracy, a CRA has an obligation to reinvestigate all information "contained in a consumer's file at a consumer reporting agency."  15 U.S.C. § 1681i(a)(1)(A).  The FCRA's definition of a "consumer report" is broad, encompassing "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for" credit, insurance, employment purposes, or other purposes defined by the FCRA.  15 U.S.C. § 1681a(d).  The Ninth Circuit has recognized the breadth of the term "consumer report,"[1] and also repeatedly stated that the FCRA is to be liberally construed.[2]

13. In addition to these broad statutory definitions and precedent for liberal construction, numerous courts have found that a "credit report" means more than simply a credit report generated for that individual consumer.  Instead, a "credit report" also includes the reports of other consumers on which that consumer is stated as being jointly responsible or involved.[3]  Accordingly, numerous courts have found that a consumer has standing to sue a CRA under 15 U.S.C. § 1681i for the CRA's failure to properly reinvestigate a co-

---

[1] *See Reynolds v. Hartford Financial Services Group, Inc.*, 435 F.3d 1081, 1094 (9th Cir. 2006), *rev'd on other grounds*, 551 U.S. 47 (2007).

[2] *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

[3] *See, e.g.*, *Koropolous v. Credit Bureau, Inc.*, 734 F.2d 37 (D.C. Cir. 1984); *Neclario v. Trans Union, LLC*, 983 F. Supp. 2d 199 (D. Conn. 2013); *Henderson v. Chase Home Finance, LLC*, No. CV 09-2461-PHX-JAT, 2012 WL 4006686 (D. Ariz. Sept. 12, 2012); *Soghomonian v. United States*, 278 F. Supp. 2d 1151 (E.D. Cal. 2003), *vacated by stipulation of the parties*, 2005 WL 1972594 (E.D. Cal. June 20, 2005); *Barron v. Trans Union Corp.*, 82 F. Supp. 2d 1288 (M.D. Ala. 2000); *Williams v. Equifax Credit Information Services*, 892 F. Supp. 951 (E.D. Mich. 1995); *Conley v. TRW Credit Data*, 381 F. Supp. 473 (N.D. Ill. 1974).

obligor's account, when the disputing consumer holds an account jointly and remains jointly obligated thereon.

14. Because all joint debtors are obligated to make payments on a joint account, inclusion of a consumer's name and account status on the "consumer report" of either joint obligor impacts the creditworthiness of each consumer. A CRA's failure to report a joint account consistently as between both joint obligors results in inconsistent, unfair, and arbitrary reporting on accounts which should be identical. Consequently, when a consumer disputes the accuracy of information contained on a joint account and the CRA fails to reinvestigate and correct the information contained on both his and his co-obligor's joint account, or even provide notice to the data furnisher of the same, the CRA has failed to conduct a full and complete reinvestigation under 15 U.S.C. § 1681i.

15. Additionally, spouses often elect to file bankruptcy petitions jointly, and include in the bankruptcy accounts they hold on a joint basis. Accordingly, after the bankruptcy is terminated, reporting on both spouses' accounts should report identically.

16. On information and belief, Experian consistently fails to reinvestigate joint accounts held by a common class of joint obligors: spouses. Specifically, when one spouse disputes the accuracy of an account held jointly by both spouses, Experian has a policy and practice of not reinvestigating and correcting the non-disputing spouse's tradeline, as it is changed as a result of a consumer dispute submitted by the other spouse, in violation of 15 U.S.C. §§ 1681i and 1681e(b).

17. This failure to reinvestigate both joint accounts leads to fundamentally inaccurate and contradictory reporting. For example, if Experian's reinvestigation of one spouse's jointly held tradeline results in changes to that tradeline, but leaves the tradeline unchanged on the

non-disputing spouse's credit report, both spouse's credit reports may be rendered inaccurate, in violation of 15 U.S.C. § 1681i. This can have deleterious effects in the event that either spouse applies for credit either individually, or jointly.

18.    Moreover, on information and belief, Experian's reports of reinvestigation to the disputing spouse also fail to provide the disputing spouse with the joint account information included in his or her spouse's credit report, so that the disputing spouse may compare any inconsistences between the reporting on the two accounts. This renders Experian's reinvestigation incomplete, in violation of 15 U.S.C. § 1681i.

19.    Experian's failure to reinvestigate the joint account information on both spouse's credit reports also may render both accounts materially misleading, as it is impossible for the disputing spouse consumer to determine which of the two joint accounts is reporting correctly – if either account is reporting correctly at all.

20.    In following a policy under which it failed to reinvestigate its reporting on both spouse's accounts after being notified by one spouse of a dispute to the accuracy of the reported information, Experian failed to follow reasonable procedures designed to ensure maximum possible accuracy of information which would occur on a consumer's credit report. *See* 15 U.S.C. § 1681e(b).

*Experian's representatives have stated that Experian has adopted Metro 2 reporting standards, which require identical reporting of co-obligor accounts included in bankruptcy.*

21.    Identical reporting of co-obligor accounts is contemplated by authoritative credit reporting industry guidelines. Specifically, the Consumer Data Industry Association ("CDIA") publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their

compliance requirements under the FCRA.  Courts rely on such guidance to determine furnisher liability.[4]

22.    Experian's representatives have declared that "Experian's policy for the reporting of data follows the guidelines of the Credit Reporting Resource Guide ("Guide"), published by the Consumer Data Industry Association ("CDIA"), including the reporting of accounts included in bankruptcy."[5]

23.    On information and belief, Experian adopted and at all times relevant adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations and reinvestigations of disputed information.

24.    The Metro 2 standards, specifically Frequently Asked Questions 27(a) 28(a), require identical reporting of tradelines of consumers who filed Chapter 7 or Chapter 13 bankruptcies.

25.    Thus, inconsistent reinvestigation of, or subsequent inconsistent reporting of, joint account holders who filed Chapter 7 or Chapter 13 bankruptcies departs from the credit industry's own reporting standards, and is not only inaccurate, but also materially misleading under, *inter alia*, the Metro 2 standards.

26.    A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data.[6]

***Experian has claimed the capacity to implement wide-ranging and complex systems for obtaining, storing, and reporting bankruptcy-related tradeline data***

---

[4] *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation 'Discharged in bankruptcy' and with a zero balance due").

[5] *See Dixon v. Experian Information Solutions, Inc.*, No. 13-cv-227-PPS-PRC, 2014 WL 2881589, at *5 (N.D. Ind. June 25, 2014); *Dixon*, ECF Dkt. 42-2, Declaration of Kimberly Hughes, at ¶ 17.

[6] *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

27.    Experian's failure to reinvestigate joint accounts as a matter of policy and in contradiction to the industry-wide Metro 2 reporting standards is, on information and belief, not a problem of capability.  Indeed, Experian has repeatedly claimed the ability to develop and implement complex systems to manage its internal data, which should make it possible to reconcile its joint account tradeline data.

28.    For example, Experian has claimed to employ automated systems in connection with its public records data, specifically bankruptcy data.  Experian's public records vendor, LexisNexis Risk & Information Analytics Group, Inc. ("Lexis"), apparently reports to Experian both the type of bankruptcy the consumer filed as well as the major events in a consumer's bankruptcy proceeding (e.g. filed, dismissed, discharged).[7]

29.    Experian has also claimed that its internal systems are designed so that when Experian learns from Lexis that a consumer's bankruptcy was discharged, any individual accounts that are reporting as included in bankruptcy will automatically be updated to report as discharged through bankruptcy, provided that the bankruptcy filed (*e.g.* Chapter 13) matches the type of bankruptcy reporting in the public records section of a that consumer's tradeline.[8]

30.    On information and belief, Experian's "checks and balances" are not reasonable for all purposes, or even the purposes for which they were designed.[9]  At a minimum, however, Experian has claimed that the *capacity* to create a system of checks and balances, however

---

[7] *See Cardinali v. Plusfour, Inc.*, No. 16-cv-2978-JAD-NJK ("*Cardinali*"), ECF Dkt. 48, at 51-52 (D. Nev. Feb. 22, 2017) (briefing on summary judgment motion from Experian from *Pappas v. U.S. Bank Home Loan Mortgage, N.A.*, No. 15-cv-8115 (N.D. Ill. Oct. 3, 2016); *see also id.* at ECF Dkt. 51-1, Oct. 3, 2016 Declaration of Mary Methvin in Support of Motion for Summary Judgment, ("Methvin Pappas Decl."), at ¶ 5.

[8] Methvin Pappas Decl., at ¶ 10.

[9] *See, e.g.*, *Cardinali*, ECF Dkt 57 (D. Nev. Apr. 19, 2017); *Ashcraft v. Welk Resort Group, Corp.*, 16-cv-2978-JAD-NJK, ECF Dkt. 24 (D. Nev. May 9, 2017).

flawed, to streamline and correct tradeline data, including (1) automating its systems to coordinate and reconcile joint debtor account data among tradelines which Experian itself reports as being jointly held, and (2) cross-referencing that data with the bankruptcy data it also stores that indicates the presence of a bankruptcy jointly filed by spouses, for whom Experian already reports individual consumer tradelines as being included in bankruptcy.

31.    On information and belief, if Experian's systems were actually designed in this manner, Experian would have known even *before* a consumer submitted a dispute that (1) the disputed account was properly included in a bankruptcy, and (2) the names of the applicable bankruptcy filers, such that (3) its data for both spouses could be properly reinvestigated.  At the latest, however, Experian would know or have reason to know that spousal joint accounts should be reporting as included in a bankruptcy when one spouse submitted a consumer dispute to Experian under 15 U.S.C. § 1681i – even if that disputing spouse does not submit documents with his or her consumer dispute which explicitly referenced the bankruptcy.

## PLAINTIFF'S FACTUAL ALLEGATIONS

***Plaintiff and her husband jointly file a Chapter 13 bankruptcy and receive a discharge.***

32.    Plaintiff and her husband, Timothy Farmer ("Mr. Farmer") (collectively, "Joint Debtors") have at all relevant times been married.

33.    On or about 4/29/2011, Joint Debtors filed a Chapter 13 bankruptcy petition in the U.S. Bankruptcy Court for the District of Nevada, Case No. 11-16574-abl (the "Bankruptcy").

34.    Joint Debtors included in their voluntary petition obligations to First Tennessee Bank, Account No. 1045 ("First Tennessee Account"), and Wells Fargo Financial Cards, Account

No. 0237 ("Wells Fargo Account") (collectively, "Disputed Accounts"). Joint Debtors were both contractually responsible for making payments on the Disputed Accounts.

35.     Joint Debtors' Chapter 13 plan was confirmed on 3/16/2016. A confirmed plan constitutes a new contract between the debtor and creditors and a creditor's rights are defined by the confirmed plan. Consequently, a pre-petition claim provided for in a confirmed plan is no longer a pre-petition claim. The claim is a right to payment arising from the confirmed plan.[10]

36.     Joint Debtors ultimately met all of their obligations under the terms of the Confirmed Chapter 13 plan with respect to the Disputed Accounts, and on 5/3/2016, received a discharge.

### *Plaintiff receives and disputes inaccurate information on her Experian credit report*

37.     On or about 10/11/2016, Plaintiff received a "personal credit report" from Experian, Report No. 0424-3755-91 ("Experian Disclosure"). Included in this Report were the Disputed Accounts, which had been included in Plaintiff's Chapter 13 bankruptcy.

38.     The Disputed Accounts on Plaintiff's Experian Disclosure listed the "responsibility" for the account as "Joint with Timothy L Farmer" (First Tennessee) and "Joint with Tim L Farmer" (Wells Fargo). However, there was no indication on either account how either of the Disputed Accounts would have reported on Mr. Farmer's own Experian Disclosure, or whether either Disputed Account was reporting identically.

39.     Mr. Farmer had obtained his own Experian Disclosure six days before Plaintiff, on 10/5/2016. On his Experian Disclosure, the reporting on Mr. Farmer's First Tennessee

---

[10] *Padilla v. Wells Fargo Home Mortg., Inc. (In re Padilla)*, 379 B.R. 643, 649, 2007 Bankr. LEXIS 2655, *1 (Bankr. S.D. Tex. 2007).

account was identical to that of Plaintiff, but the reporting on his Wells Fargo account was not.

40.    On 11/16/2016, Plaintiff mailed a notice of dispute to Experian ("Dispute Letter"). Therein, she brought to Experian's attention claimed inaccuracies on the First Tennessee and Wells Fargo accounts.

41.    For example, Plaintiff stated that her First Tennessee account contained, *inter alia*, a series of "late" payments from May 2011-January 2014 and April 2015-February 2016.  Plaintiff also stated that her Wells Fargo account contained, *inter alia*, "charge offs" every month from December 2013-September 2016.

42.    Experian was required to conduct a reinvestigation into the Disputed Accounts on Plaintiff's Experian Disclosure pursuant to 15 U.S.C. § 1681i.  Upon information and belief, upon receiving the Dispute Letter, Experian timely notified First Tennessee and Wells Fargo of Plaintiff's dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

43.    On or about 12/16/2016, Plaintiff received notification from Experian through its "reinvestigation" (Experian Report No. 1640-4135-51) ("Experian Reinvestigation") that Experian received notice of Plaintiff's Dispute Letter pursuant to 15 U.S.C. § 1681i(a)(6). The Experian Reinvestigation acknowledged that Plaintiff's Dispute Letter pertained to both Disputed Accounts, as it noted that both accounts had been "updated" as a result of the reinvestigation.

44.    Experian's reinvestigation changed the reporting on Plaintiff's First Tennessee account. For example, Plaintiff's First Tennessee account had been updated to correctly state that the account had been "included in Chapter 13 Bankruptcy on Apr 29, 2011," and the

account now reported that the account had been "discharged through Bankruptcy Chapter 13," but stated that a "Balloon payment of $102,385" was "due Sep 2022." This reported information suggested that Plaintiff had a significant financial obligation due in several years, despite the legal effect of her timely post-bankruptcy payments and subsequent discharge.

45. Moreover, the Experian Reinvestigation did not indicate how Plaintiff's Disputed Accounts were reporting on Mr. Farmer's own Experian disclosures, and contained no comparison how reporting on how either of the Disputed Accounts differed as between Experian's reporting for Plaintiff and Mr. Farmer. However, a visual comparison between Plaintiff and Mr. Farmer's First Tennessee accounts shows patent differences:

//

//

//

//

//

//

//

//

//

//

//

//

//

### Plaintiff's Experian First Tennessee CDF



46.    On information and belief, Experian's reporting of the First Tennessee account on Mr. Farmer's Experian disclosures was materially different from Plaintiff's. For example, Mr. Farmer's First Tennessee tradeline reported on January 4, 2017 as follows:

### Mr. Farmer's Experian First Tennessee CDF



47.    Similarly, compare the Farmers' Wells Fargo CDF tradelines below. On information and belief, Mr. Farmer never explicitly disputed his Wells Fargo account with Experian, nor did Experian notify him on his January 4, 2017 reinvestigation that his Wells Fargo account had been "updated." Nevertheless, the reporting differed:

---

**Mr. Farmer's Experian Wells Fargo CDF**

Your accounts that may be considered negative (continued)

| WELLS FARGO FINANCIAL CARDS | Date opened | Type | Credit limit or | Recent balance | Responsibility |
|---|---|---|---|---|---|
| PO BOX 14517 | Mar 1995 | Credit card | original amount | $0 /paid as of | Joint with |
| DES MOINES IA 50306 | **First reported** | **Terms** | $9,300 | | DOREEN M FARMER |
| No phone number available | Not reported | Not reported | **High balance** | | **Status** |
| Partial account number | **Date of status** | **Monthly** | $10,149 | | Discharged through Bankruptcy Chapter 13. |
| 541018900237.... | Aug 2016 | **payment** | | | This account is scheduled to continue on record until Mar 2018. |
| Address identification number | | Not reported | | | **Comment** |
| 0236601183 | | | | | Completed investigation of FCRA dispute - consumer disagrees. |
| | | | | | **Account History** |
| | | | | | Debt included in Chapter 13 Bankruptcy on Aug 12, 2016. |

---

**Plaintiff's Experian Wells Fargo CDF**

Your accounts that may be considered negative (continued)

| WELLS FARGO FINANCIAL CARDS | Date opened | Type | Credit limit or | Recent balance | Responsibility |
|---|---|---|---|---|---|
| PO BOX 14517 | Mar 1995 | Credit card | original amount | $0 /paid as of | Joint with |
| DES MOINES IA 50306 | **First reported** | **Terms** | $9,300 | | TIM L FARMER |
| No phone number available | Not reported | Not reported | **High balance** | | **Status** |
| Partial account number | **Date of status** | **Monthly** | $10,149 | | Discharged through Bankruptcy Chapter 13. |
| 541018900237.... | Apr 2011 | **payment** | | | This account is scheduled to continue on record until Mar 2018. |
| Address identification number | | Not reported | | | **Comment** |
| 0236601183 | | | | | Completed investigation of FCRA dispute - consumer disagrees. |
| | | | | | This item was updated from our processing of your dispute in Dec 2016. |
| | | | | | **Account History** |
| | | | | | Debt included in Chapter 13 Bankruptcy on Apr 29, 2011. |

48.    By failing to conduct a reinvestigation of Plaintiff's Disputed Accounts which encompassed the reporting of those accounts on Mr. Farmer's credit report, Experian failed to conduct a reasonable reinvestigation under 15 U.S.C. § 1681i and reported inaccurate, misleading and inconsistent information.

49.    By failing to conduct a reinvestigation of Plaintiff's Disputed Accounts which encompassed reporting on Mr. Farmer's credit report, Experian failed to follow reasonable procedures designed to ensure maximum accuracy of credit reporting, in violation of 15 U.S.C. § 1681e(b).

### *Damages claimed from Experian's 15 U.S.C. §§ 1681e(b) and 1681i violations*

50.    As a result of the unreasonable reinvestigations outlined above, Experian continues to rereport inaccurate and negative information, thus violating its grave duty to conduct a reasonable reinvestigation under Section 1681i(a) and to follow reasonable procedures designed to ensure maximum accuracy, as it was required to do under 15 U.S.C. § 1681e(b). Experian's violations of the FCRA were at least negligent, and results in, *inter alia*, in actual damages to Plaintiff in challenging the Defendants' wrongful representations. 15 U.S.C. § 1681o.

51.    On information and belief, Experian's decision not to reinvestigate the Disputed Accounts as they appeared on Plaintiff and Mr. Farmer's Experian disclosures, or adopt and follow reasonable procedures designed to ensure maximum accuracy of reported credit information, was also willful. Thus, Experian is also liable for statutory and punitive damages. 15 U.S.C. § 1681n.

52.    Experian's FCRA violations also violated Plaintiff's right to receive a full and correct reinvestigation of her credit information under 15 U.S.C. § 1681i, depriving her of the

opportunity to meaningfully review any changes for completeness.[11]  By depriving Plaintiff of a complete record of how the Disputed Accounts appeared on Mr. Farmer's Experian disclosure, Experian subjected Plaintiff to a concrete informational injury by making it impossible for her to meaningfully verify that her Disputed Accounts, and the obligations she had undertaken, were being reported accurately.

53.    Plaintiff has also been obligated to retain an attorney to prosecute these negligent and willful violations of 15 U.S.C. §§ 1681e(b) and 1681i, and has incurred attorney's fees and costs as a result, recoverable under  15 U.S.C. § 1681o, 15 U.S.C. § 1681n.

## CLASS ACTION ALLEGATIONS

54.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

55.    Plaintiff brings this action on behalf of themselves and on behalf of all others similarly situated ("the Class").

56.    Plaintiff represents, and is a member of the Class, consisting of:

All persons with addresses within the United States who (1) filed a joint petition for bankruptcy under Chapter 7 or Chapter 13 of the Bankruptcy Code with their spouse, (2) received a discharge in that bankruptcy, and, within the past two years, (3) submitted to Experian  a dispute with the accuracy of information contained in their consumer file on least one account subject to the bankruptcy discharge, and (4) in response to that dispute, received a reinvestigation from Experian, which (5) rereported updates to the disputing spouse's joint account(s), but resulted in no corresponding update to the joint account as it appeared in the non-disputing spouse's consumer file maintained by Experian.

57.    Experian, First Tennessee, Wells Fargo, and their respective employees or agents, are excluded from the Class.

---

[11] *Cf., e.g.*, *Syed v. M-I LLC*, 846 F.3d 1034 (9th Cir. 2017).

58.    Plaintiff does not know the number of members in the Class, but believes the Class members number in the thousands, if not more.  Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

59.    Plaintiff and members of the Class were harmed by the acts of Experian in at least the following ways: Experian, either directly or through its agents, violated 15 U.S.C. §§ 1681i and 1681e(b) when it failed to reinvestigate any disputed joint accounts to ensure that these accounts were reporting consistently.  Plaintiff and Class members were damaged thereby because Experian's incomplete and misleading reinvestigations subjected these joint debtors to the prospect of adverse results when applying for credit. Plaintiff and Class members also suffered a concrete informational injury because Experian's reinvestigations, which Plaintiff and Class members had a right to obtain, were fundamentally incomplete and precluded Plaintiff and Class members from meaningfully verify that the accounts were being reported accurately.

60.    This class allegation seeks recovery statutory and punitive damages on behalf of the Class, declarations that Experian's conduct common to all class members violated the FCRA, any relief the Court deems appropriate under Federal Rule of Civil Procedure 23(b)(2), and reasonable attorney's fees and costs.  It expressly is not intended to request any recovery for personal injury and claims related thereto.  Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

61.    The joinder of Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court.  The members of the Class can be identified through Experian's records or Experian's agents' records.

62. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

   a. Whether, within the two years prior to the filing of the Complaint in this matter, Experian or its agents violated 15 U.S.C. §§ 1681i and 1681e(b) by performing a reinvestigation which did not ensure that jointly held accounts were reporting consistently; and

   b. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violations.

63. Plaintiff is typical of the Class members in that she suffered harm resulting from Experian's incomplete reinvestigation and failure to follow reasonable procedures to ensure the maximum accuracy of credit reporting.

64. Plaintiff will fairly and adequately represent and protect the interest of the Class in that she has no interests antagonistic to any member of the Class.

65. Plaintiff and the members of the Class have all suffered irreparable harm as a result of Experian's unlawful and wrongful conduct; namely they each lost their congressionally guaranteed right to a complete and thorough reinvestigation under 15 U.S.C. § 1681i, or the inherent protection of reasonably crafted reinvestigation procedures mandated under 15 U.S.C. § 1681e(b). As a result, Plaintiff and Class members have lost a benefit conferred on them by Congress, which can never be recovered. Absent a class action, the Class members will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Experian will likely

continue such illegal conduct.   These actions will likely cause systematic deficiencies which continue to cause consumers to suffer from concrete informational harms.

66.     Thus, Plaintiff and the Class members request, in addition to their damage claims, a declaration from the Court that in failing to reinvestigate jointly held accounts after being notified of a consumer dispute from one joint account-holder, Experian violated 15 U.S.C. §§ 1681i and 1681e(b).   A declaration will prevent Experian from engaging in similar conduct for other consumers in the future.   Because of the size of the individual Class member's claims, few, if any, of the Class members could afford to seek legal redress for the wrongs complained of herein.

67.     Class certification is also appropriate because Experian has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the class members available under Federal Rule of Civil Procedure 23(b)(2).

68.     Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the FCRA.

69.     A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Experian to comply with federal law.   The interest of the Class members in individually controlling the prosecution of separate claims against Experian is small because the maximum statutory damages in an individual action for FCRA violations are minimal.   Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

70.     Experian has acted on grounds generally applicable to the Class.


…

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FCRA, 15 U.S.C. §§ 1681e(b), 1681i

71.    Plaintiff and Class members incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

72.    The foregoing acts and omissions constitute numerous and multiple negligent, willful or reckless violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681 *et seq.*, including but not limited to 15 U.S.C. §§ 1681e(b) and 1681i.

73.    As a result of each and every negligent violation of the FCRA, Plaintiff and Class members are entitled to actual damages pursuant to 15 U.S.C. § 1681o(a)(1), and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Experian.

74.    As a result of each and every willful violation of the FCRA, Plaintiff and Class members are entitled to statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Experian.

75.    Plaintiff and Class members are also entitled to a declaration from the Court that in failing to reinvestigate jointly held accounts after being notified of a consumer dispute from one joint account-holder, Experian violated 15 U.S.C. §§ 1681i and 1681e(b).

76.    Plaintiff and Class members are also entitled to appropriate equitable injunctive relief, including orders preliminarily and permanently enjoining Experian from further engagement in the FCRA violations listed above.  Federal Rule of Civil Procedure 23(b)(2).

## PRAYER FOR RELIEF

Plaintiff and Class  members (where applicable) respectfully request the Court grant them the following relief against Experian:

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FCRA, 15 U.S.C. §§ 1681e(b), 1681i

- an award of actual damages for the concrete information harms suffered pursuant to 15 U.S.C. 1681o(a)(1);

- an award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- A declaration from the Court that in failing to reinvestigate jointly held accounts after being notified of a consumer dispute from one joint account-holder, Experian violated 15 U.S.C. §§ 1681i and 1681e(b);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

- orders preliminarily and permanently enjoining Experian from engaging in the violations of the FCRA outlined above; and

- any other relief the Court may deem just and proper.

///

///

///

///

///

## TRIAL BY JURY

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff and Class members are entitled to, and demand, a trial by jury.

Dated: May 31, 2017                     Respectfully submitted,


                                        */s/ David H. Krieger*
                                        David H. Krieger, Esq.
                                        HAINES & KRIEGER, LLC
                                        8985 S. Eastern Avenue, Suite 350
                                        Henderson, Nevada 89123

                                        Matthew I. Knepper, Esq.
                                        Miles N. Clark, Esq.
                                        KNEPPER & CLARK LLC
                                        10040 W. Cheyenne Ave., Suite 170-109
                                        Las Vegas, NV 89129

                                        Attorneys for Plaintiff